J. I. Case Threshing Machine Company, Appellant, vs. Folger and another, Respondents.

*September 29—October 20, 1908.*

*Action, tort or contract? Agency contract: Breach: "Conversion:" Delivery of goods without requiring payment: Personal liability of agents.*

1. By a contract of agency for the sale of agricultural machinery no machinery was to be delivered to purchasers except for cash or notes actually received, and it was provided that any sale in violation of that requirement should be deemed a conversion of the machinery by the agents, who should thereupon become personally liable to the principal for the full price thereof. In an action by the principal against the agents the complaint set out the contract and alleged that in violation thereof the agents sold and delivered certain machinery without its being paid or settled for in cash or notes and that plaintiff elected to treat such delivery as a conversion of the machinery by the defendants, who were personally liable therefor. *Held*, that the action was one for breach of contract, and that the "conversion" mentioned in the contract and complaint meant merely that by default of the agents the property had become theirs and they had become personally liable as stipulated in the contract.

2. Acts of the agents in such case, in leaving machinery on the highway, not in charge of any person, and notifying the purchaser, without specifying any time, to come and get it and settle for it, thus giving him an opportunity, of which he availed himself, to get the machinery without first settling for it, are *held* to have been a breach of the contract, entitling the principal to hold them personally liable for the machinery.

Appeal from a judgment of the circuit court for St. Croix county: E. W. Helms, Circuit Judge. *Reversed.*

On October 13, 1904, the parties entered into a contract in writing whereby the plaintiff appointed the defendants its agents at Baldwin, Wisconsin, for the sale of machinery, etc., for the season of 1905, terminating September 30th of that year. The agents agreed, among other things, to sell only for cash or to responsible purchasers who gave ample security for all time payments, and to sell and deliver no machinery

in any case except upon written order of the purchasers, taken upon the plaintiff's forms, to be accepted by the plaintiff at its home office, and for cash in hand or interest-bearing notes actually received, duly executed, and properly secured. Any sale in violation of these requirements was to be deemed a conversion of the goods by the agents, who should thereupon become personally liable for, and on demand account to the company in cash for, the full list price thereof, with interest from the date of delivery at the highest rate allowed by law on written contracts. In case the agents should deliver any machinery in violation of this contract the plaintiff might, in its discretion, deal directly with the purchaser, and make such settlement with him as the plaintiff should deem best, without prejudice to its claim against the agents for the full list price of said machinery and for all losses and expenses incurred by reason of such violation. The agents also agreed to be governed by the instructions printed in red ink, forming part of the contract, and to obey the same. These instructions included the following upon the subject of delivery:

"Agents subject us to greater loss by letting parties take machines before settlement than from all other causes. We prefer to make no sale rather than to let a machine go without cash or notes and securities all given before it leaves our agents' hands. We shall hold our agents strictly to their contract, and give this notice that they may be forewarned. . . . Never deliver a machine to purchaser until settled for."

The contract and instructions contained other provisions not relevant here.

Suit was brought upon a complaint averring, among other things, the making of this contract, a copy of which was annexed to the complaint and made part thereof, reciting the agreements thereof, averring an order received August 9, 1905, from one W. P. Hope for a separator, stacker, sieve, and weigher for which Hope was to pay $760 and for which he should execute his two promissory notes for the sum of

$380 each, with interest, to be secured by first mortgage on said machinery; the order directing the plaintiff to ship the said machinery to a place called Hammond, in care of the defendants, as agents for the plaintiff, for delivery to Hope upon his making settlement therefor in accordance with the terms of the order.    The machinery was shipped, consigned to the defendants, and arrived at Hammond August 15, 1905, but the defendants, about seven days thereafter, "in violation of the terms and conditions of their aforesaid agency contract, and in breach of their duty to this plaintiff, and without its knowledge or consent, delivered all said machinery to said William P. Hope without requiring said Hope to pay for said machinery or to make settlement therefor by executing and delivering his notes and mortgage to this plaintiff, or to make any other settlement therefor, and said Hope took and removed said machinery without paying or making settlement therefor."    A demand upon the defendants to account was averred, and this was followed by an averment that the plaintiff has elected and did thereby elect to treat the delivery of said machinery so made by said defendants in violation of their agency contract as a conversion of said machinery by said defendants, who were personally liable therefor.

The defendants, answering, denied that they ever at any time delivered all or any of said machinery to said Hope in any manner or upon any conditions whatever, and averred that, some time after the defendants had unloaded the machinery from the cars, Hope without right or authority from the defendants or either of them, and without their knowledge, took said machinery and the whole thereof.

The jury returned a special verdict finding only that the defendants did not at any time deliver the machinery covered by the contract to Hope.    Upon this verdict judgment was entered in favor of the defendants, dismissing the complaint.    The plaintiff appeals.

For the appellant there was a brief by *Baker & Haven,*
and oral argument by *Spencer Haven.* They cited *Prince
v. Alabama State Fair,* 106 Ala. 340, 28 L. R. A. 716; *Bur-
nell v. N. Y. C. R. Co.* 45 N. Y. 184; *Fairfax v. N. Y. C. &
H. R. R. Co.* 67 N. Y. 11; *Ouderkirk v. Central Nat. Bank,*
119 N. Y. 263; *Roberts v. Stuyvesant S. D. Co.* 123 N. Y.
57, 65.

*E. B. Kir. 'y,* for the respondents, cited, among other au-
thorities: *Collins v. Lowry,* 78 Wis. 329, 47 N. W. 612;
*Pierce v. O'Keefe,* 11 Wis. 180; *Carroll v. Fethers,* 102 Wis.
436, 78 N. W. 604; Jaggard, Torts, 709; *Root v. Bonnema,*
22 Wis. 539; *Lander v. Bechtel,* 55 Wis. 593, 13 N. W.
483; 28 Am. & Eng. Ency. of Law (2d ed.) 686; sec.
2858*m,* Stats. (1898); ch. 346, Laws of 1907.

TIMLIN, J. The plaintiff moved to strike out the answer.
of the jury to the single question of the special verdict and
insert in lieu thereof an affirmative answer and for judgment
in its favor, and also moved for judgment notwithstanding
the verdict.

The defendants contend that the action is one for conver-
sion, and base various claims upon this proposition, all of
which may be easily and accurately disposed of by ruling,
as we do, that the action is one for breach of contract, and
the conversion mentioned in the contract and in the com-
plaint means merely that by the default of the agents the
property has become theirs, and the liability to the plaintiff
for the purchase price has been incurred as stipulated in the
contract. The word "conversion" has various meanings,
both popularly and in the law. A familiar rule of interpre-
tation refuses to give any such word a fixed and unvarying
meaning, regardless of the context or of the subject matter
of the writing.

The plaintiff's evidence made out a case for recovery by
the plaintiff. The defendants met this by the testimony of

defendant *Aune,* denying an admission alleged to have been made by him at the state fair, and by the testimony of defendant *Folger* to the effect that he telephoned from Hammond to Mr. Hope, the purchaser, telling the latter that the machinery was at Hammond and that Hope should get it and settle for it. To this Hope replied that he would come to Hammond in the afternoon of that day, but did not come. After this telephonic communication, *Folger,* with the aid of Hope's servant, Kotts, unloaded the machinery from the car and placed it on the roadside near the depot, in charge of no person, and notified Kotts to tell Hope to come and get the machinery and settle for it and not leave it standing there very long. *Folger* then went away from Hammond, leaving no person in charge of the machinery at Hammond with whom Hope could settle. Neither of the defendants lived at Hammond. Hope did in part as requested; that is to say, he did not leave the machinery standing there very long, and he sent Kotts for it and took it away, but he did not settle for it.

The defendants fixed upon no time at which they would meet Hope, at Hammond or elsewhere, to settle for the machinery. They had no one at Hammond to settle with him, and allowed Hope an indefinite time within which he could take away the machinery. *Folger* did not, by his message to Hope through Kotts, expressly make the settlement for the machinery a condition precedent to Hope's taking it away. This was a delivery to Hope within the meaning of the contract, because it was putting it in the power of Hope to take away the machinery before settling for it. It will not avail the defendants that Hope acted upon their invitation in part by taking away the machinery, but disregarded or postponed compliance with their request to settle for it. The contract in question would be practically worthless in this particular if its provisions prohibiting delivery before settlement could be evaded by leaving the machinery on the highway, not in

charge of any person, notifying the purchaser to come in at an indefinite time and get it and settle for it, thus giving him an opportunity to get it without settling for it, or to get it first and settle for it afterwards.

We must hold that upon the evidence of the defendants there was a breach of the contract in permitting a delivery of the machinery to Hope before he settled for it. It follows that the judgment of the court below must be reversed, with costs, and with instructions to that court to change the answer of the jury from a negative to an affirmative and render judgment thereon in favor of the plaintiff, as prayed for in the complaint.

*By the Court.*—It is so ordered.